IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re: )
)
CAROL OAKLEY DUNCAN, ) Case No. 09-01255-TOM7
)
)
Debtor. )

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for hearing on August 5, 2009 (hereinafter, the "Hearing") on Great American Insurance Company's Motion for Extension of Time to File Complaints under 11 U.S.C. § 523 [and 11 U.S.C. § 727] and Request for Expedited Hearing (hereinafter the "Motion") and the Debtor's Response to Emergency Motion to Extend Filing Deadline for 523-727 Complaint and Request for Expedited Hearing on or before June 1, 2009 (hereinafter, the "Response"). (Proceeding No. 15 and Proceeding No. 19) Appearing at the Hearing were: Carol Oakley Duncan (hereinafter, the "Debtor"); David Murphree, attorney for the Debtor; Kathryn Pope and Kris Sodergren, attorneys for Great American Insurance Company (hereinafter, "GAI"); and James G. Henderson, the chapter 7 trustee (hereinafter, the "Trustee") as a witness. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).[1]

## I. FINDINGS OF FACT[2]

---

[1]This Memorandum Opinion constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

[2]Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

On or about March 3, 2009, the Debtor filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code (hereinafter, the "Petition Date"). Schedule F, attached to the Debtor's petition, lists GAI as an unsecured creditor and lists as "additional notice" for GAI the name and address of one of its attorneys at Rosen & Harwood, P.A. (Proceeding No. 1) On the Petition Date, the Clerk's Office mailed out a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" (hereinafter, the "Notice"), indicating the meeting of creditors would take place on April 2, 2009 (hereinafter, the "341 Meeting"). (Proceeding No. 6) The Notice further indicated a deadline of June 1, 2009 for filing a complaint objecting to discharge of the Debtor or to determine dischargeability of debts (hereinafter, the "Deadline"). This Notice was sent to GAI directly and to one of GAI's attorneys at Rosen & Harwood, P.A., R. Cooper Shattuck.[3] Following the 341 Meeting, on April 7, 2009, the Trustee filed his Report of No Distribution (hereinafter, "No Asset Report"). (Proceeding No. 10)

On May 6, 2009, two months after the Petition Date, Mr. Sodergren on behalf of GAI filed a Notice of Appearance and Request for Notice for himself, Ms. Pope and Mr. Shattuck. (Proceeding No. 12) Also on May 6, Mr. Sodergren filed with the Court a Notice of 2004 Examination, which indicated the Debtor would participate in a deposition on May 15, 2009 at Mr. Murphree's office in front of a Tuscaloosa Court Reporter (hereinafter, the "Examination").[4] (Proceeding No. 13) On May 27, 2009, five days before the Deadline, Mr. Sodergren filed the

---

[3] The Notice to Mr. Shattuck was sent to P.O. Box 2727 Tuscaloosa, Alabama 35403, the post office box for Rosen & Harwood, P.A. This was also the post office box listed on schedule F. The Notice to GAI was sent to P.O. Box 2119 Cincinnati, OH 45201, the address indicated on schedule F.

[4] No motion by GAI or order by this Court was ever filed or entered in this case as required by Fed. R. Bankr. P. 2004(a).

Motion. (Proceeding No. 15) On May 29, 2009 the Clerk's Office issued a twenty day notice to creditors of a hearing on the Motion to be held on July 9, 2009, during which time the Deadline expired. (Proceeding No. 16 and Proceeding No. 17) On July 1, 2009, the Debtor's counsel filed the Response in opposition to the Motion, and at the July hearing, it became evident to the Court that an evidentiary hearing would be needed. (Proceeding No. 19)

At the Hearing, Mr. Sodergren, of the law firm Rosen & Harwood, P.A. (hereinafter, "Rosen & Harwood"), testified in support of the Motion.[5] Mr. Sodergren, Ms. Pope and Mr. Shattuck are all attorneys at Rosen & Harwood and have represented GAI in either its past or present controversies with the Debtor. Mr. Sodergren testified that the issues began in 2007, when Rosen & Harwood represented GAI in a contractual dispute against the Debtor. The Debtor's husband, Mr. Duncan, owned a commercial contracting business, CCS Duncan, LLC, and GAI provided surety bonds for some of the company's projects. At GAI's request, both Mr. Duncan and the Debtor were required to be indemnitors under GAI's surety bonds. The Debtor was not involved in her husband's business, but did sign the indemnity agreement when requested to do so.

The Debtor testified that her husband was murdered at their home on a Sunday morning in November, 2006. After Mr. Duncan's death, his company defaulted on some of its projects. GAI finished the projects under the surety bonds, and as a result, sought to recover the costs. GAI filed a claim for $638,000.00 in Mr. Duncan's probate proceedings.[6] GAI pursued this same claim amount against the Debtor in the Lauderdale County Circuit Court. Mr. Sodergren testified that the

---

[5] Ms. Pope qualified Mr. Sodergren as an expert witness in bankruptcy based upon his 8 years of legal practice doing bankruptcy and other creditor work.

[6] Mr. Sodergren testified that GAI's involvement in the probate proceedings was limited to filing a claim.

3

state court suit was purely contractual and contained no allegations of fraud or other misconduct. The state court determined the Debtor's liability under the contract before the bankruptcy case was filed, but no judgment for damages has been entered.

Mr. Sodergren testified that he personally received notice of the Debtor's bankruptcy when GAI faxed him a copy of the Notice on March 13, 2009.[7] (Exhibit 1) Upon receiving the Notice, Mr. Sodergren testified that he examined the Debtor's schedules for any assets that might result in a recovery for creditors such as GAI. He then compared the bankruptcy information with the firm's GAI file pertaining to the state court case against the Debtor. There was not much information in the file regarding the Debtor's assets. As a result, Mr. Sodergren sought to obtain some information from the executrix of Mr. Duncan's estate, Hope Hammond, who was Mr. Duncan's youngest daughter. Following over a week and a half of correspondence, Ms. Hammond provided Mr. Sodergren what appears to be lists and alleged values of certain assets that might belong to the Debtor.[8] (Exhibit 3)

On March 20, 2009, after receiving the information from Ms. Hammond, Mr. Sodergren emailed the Trustee regarding these potential assets and the upcoming 341 Meeting. (Exhibit 2) This email indicates Mr. Sodergren knew the 341 Meeting would take place April 2, 2009. When the Trustee did not respond within a week, he resent the email, this time attaching the documents from Ms. Hammond. (Exhibit 3) Mr. Sodergren also spoke with the Trustee regarding the 341

---

[7]Exhibit one indicates that GAI received the Notice mailed from the Clerk's Office on March 11, 2009. As previously mentioned, the Clerk's Office also mailed a copy of the Notice to Mr. Shattuck at Rosen & Harwood's post office box on March 3, 2009. (Proceeding No. 6)

[8]The Debtor testified that Mr. Duncan's three daughters, including Ms. Hammond, have not spoken to her since their father's funeral. The Debtor further testified that the daughters forced her from the home she had shared with Mr. Duncan by cutting off the home's utilities.

4

Meeting and the information he sent. In a follow-up email, dated March 31, 2009, Mr. Sodergren indicated that he understood the Trustee would question the Debtor and then determine how to proceed.[9] (Exhibit 4) Mr. Sodergren also testified that the Trustee told him the 341 Meetings are short due to the large number of cases set. The Trustee affirmed this during his testimony, adding he usually tells creditors' attorneys that Rule 2004 examinations are the best forum to question the Debtor. *See* Fed. R. Bankr. P. 2004.

Mr. Sodergren did not attend the 341 Meeting, nor did anyone else from Rosen & Harwood or GAI. Mr. Sodergren testified that he knew about the filing of the Trustee's No Asset Report by April 16, 2009 (9 days after it was filed)[10], and mailed a letter to the Trustee that same day inquiring about the meaning of the Trustee's filing such a report. (Exhibit 5) Mr. Sodergren received his letter back from the Trustee on April 21, 2009, in an envelope postmarked April 20, 2009. (Exhibit 6) On the bottom of the returned letter, the Trustee's note indicated that yes he had questioned the Debtor, but due to there being no assets, he filed his report.[11] (Exhibit 6) Mr. Sodergren testified

---

[9] The Trustee, Mr. Henderson, has served as trustee for at least 33 years. The Trustee testified that he has thousands of cases and does not recall specifics from his conversation with Mr. Sodergren. Further, the Trustee also testified that although he does not dispute that the emails are to his correct email address, he does not recall receiving them. (Exhibits 2 through 4)

[10] As previously mentioned, GAI's counsel did not file its Notice of Appearance until May 6, 2009. Had the firm filed it before the 341 Meeting or immediately after, the firm would have received immediate notification of the filing of the Trustee's No Asset Report.

[11] The Trustee testified that he files such a report when there are not enough beneficial assets to pursue on behalf of the estate and creditors.

5

that he relayed the information to GAI, and nine days later, GAI told him to pursue these potential assets, even if GAI had to bear the expenses.[12]

On Friday afternoon, May 1, 2009, Mr. Sodergren made his first attempt to communicate with the Debtor's counsel, Mr. Murphree, by sending Mr. Murphree an email to see when the Debtor would be available for questioning. (Exhibit 7) Mr. Sodergren testified that he spoke with Mr. Murphree three business days later on Tuesday, May 5, 2009. Following their conversation, Mr. Murphree sent Mr. Sodergren an email confirming that the Debtor would be available for questioning on May 15, 2009, at Mr. Murphree's office. (Exhibit 8) Mr. Sodergren agreed during his testimony on cross-examination that procuring a deposition within 10 days of first requesting it with Mr. Murphree was a prompt response. The next day, Mr. Sodergren filed his Notice of Appearance in the Debtor's bankruptcy case and filed a Notice of 2004 Examination.[13]

The Debtor appeared for the Examination on May 15, 2009, at Mr. Murphree's office, along with Ms. Pope, Mr. Shattuck and a representative from GAI. At the Examination, the Debtor testified that she was requested to produce certain documents. Mr. Sodergren testified that he filed the Motion on May 27, 2009, because they had not received the requested documents.[14] On May 29, 2009, Ms. Pope wrote a letter to the Debtor or her counsel requesting the documents discussed

---

[12] GAI and its counsel lost at least two weeks or more because they did not immediately receive the Trustee's No Asset Report, and then GAI took a week to respond to its counsel.

[13] Mr. Sodergren testified that because the Debtor had agreed to the Examination, he did not think that it was necessary to file a motion and get a court order as prescribed by Fed. R. Bankr. P. 2004(a).

[14] The Debtor was not personally served with the Motion.

6

during the Debtor's examination.[15] On June 1, 2009, the Deadline, Mr. Murphree sent a letter to Ms. Pope asking for her to set forth the exact documents requested from the Debtor. (Exhibit 11) That same day, Mr. Murphree also sent a letter to Mr. Sodergren and GAI, threatening to file a Motion for Sanctions if they did not withdraw the Motion within twenty days. (Exhibit 10) Once the Deadline passed, Ms. Pope replied to Mr. Murphree by letter dated June 10, 2009, setting forth the documents needed. (Exhibit 12) The Debtor testified that she provided the documents to Mr. Murphree.

## II. CONCLUSIONS OF LAW

Pursuant to Rule 4004(b) and Rule 4007(c), the deadline for filing a complaint objecting to the Debtor's discharge or to determine the dischargeability of a debt may be extended on motion of any party in interest, provided cause exists and the motion is filed before the deadline has expired. *See* Fed. R. Bankr. P. 4004(b) and Fed. R. Bankr. P. 4007(c). GAI filed the Motion on May 27, 2009. The Deadline to file a complaint was June 1, 2009. Thus, the Motion is timely, and the issue is whether cause exists to extend the Deadline.

Cause is not defined in the Bankruptcy Code. This Court has previously discussed "cause" in its memorandum opinion entered in *In re Dalton*, Case No. 07-03550 (Bankr. N.D. Ala. December 20, 2007).[16] In that opinion, this Court adopted the factors set forth in *In re Ballas*, 342 B.R. 853 (Bankr. M.D. Fla. 2005), *aff'd*, 212 Fed. Appx. 867 (11th Cir. 2006) (not intended for publication).

---

[15] Exhibit 12 indicates that Ms. Pope sent this letter requesting certain documents. It is unclear whether this letter was sent directly to the Debtor or to Debtor's counsel.

[16] Counsel for the Debtor brought *In re Dalton* to Mr. Sodergren's and Ms. Pope's attention and provided them a copy. (Exhibit 13) However, *Dalton* is distinguishable from this case, because at that evidentiary hearing the creditors failed to produce any witnesses or submit any admissible evidence.

7

The *Ballas* court considered the following factors: (1) whether the debtor refused in bad faith to cooperate with the creditor; (2) whether the creditor had sufficient notice of the deadline and information so as to file an objection; (3) the possibility that the proceedings pending in another forum will result in collateral estoppel on the relevant issues; (4) whether the creditor exercised diligence; and (5) the complexity of the case. *Id.* at 856. The *Ballas* court emphasized the most important factor is whether the creditor exercised diligence. *Id.*; *see also In re Denike*, 322 B.R. 452, 455 (Bankr. M.D. Fla. 2005) (a "creditor's lack of diligence can be fatal to its request at the eleventh hour to obtain an extension of the time period"); *In re Woods*, 260 B.R. 41, 44-45 (Bankr. N.D. Fla. 2001) ("a lack of diligent effort by a creditor can be fatal to a creditor's last minute attempt to achieve an extension of the deadline").

The Court will address each of the *Ballas* factors to see if cause exist. First, the Court must determine if the Debtor exercised good faith in cooperating with GAI. The Debtor appeared as requested for questioning at the scheduled 341 Meeting. GAI or Mr. Sodergren could have attended, but chose not to go. Instead, GAI, before expending its own time and money, waited to see if the Trustee would pursue any assets of the Debtor. Further, the Debtor's attorney, Mr. Murphree, promptly responded to Mr. Sodergren's request for an opportunity to question the Debtor. Even though Mr. Sodergren did not properly procure a Rule 2004 examination, the Debtor nonetheless made herself available within 10 days of Mr. Sodergren and Mr. Murphree's first conversation in early May and answered GAI's questions. Finally, the Debtor testified that at some point she provided to Mr. Murphree the documents requested by GAI during the Examination. Thus, the Court finds the Debtor fully cooperated in good faith with GAI, despite the tragic and untimely death of her husband.

8

Next, the Court must decide whether GAI and its counsel had adequate notice of the Deadline and the information needed to file a complaint. The Debtor properly listed GAI on schedule F, as well as its law firm, Rosen & Harwood. This Court's electronic filing system indicates that GAI and Rosen & Harwood were sent the Notice of the filing of this case on March 3, 2009. (Proceeding No. 6) However, even considering that Mr. Sodergren did not become aware of the Notice until March 13, 2009, Mr. Sodergren, from the day he *received* the Notice to the June 1 Deadline, had 80 days to look into any information that might assist GAI in deciding whether to file a complaint. Furthermore, Rosen & Harwood had represented GAI in litigation against the Debtor since 2007 and were familiar with the Debtor's circumstances. Thus, GAI and its attorneys had sufficient notice.

The third and fifth factors are whether the proceeding, if held in another forum, could result in collateral estoppel and whether the case is complex. Mr. Sodergren testified that the 2007 state court case, pending in the Lauderdale County Circuit Court, is purely contractual, and the Debtor's liability has been determined. The underlying causes of action, if any against the Debtor in bankruptcy, if allowed to proceed would presumably rely solely upon Title 11. Since those are causes that generally are raised only in bankruptcy adversary proceedings, the Court finds its is unlikely this factor is an issue and certainly is no basis for "cause". Likewise, neither the bankruptcy issues nor the contractual issues of the state court case are complex.

The final *Ballas* factor the Court must consider is factor four: whether GAI and its counsel exercised diligence. In examining this factor, the Court is mindful that the ultimate goal of a Chapter 7 discharge is to give the Debtor a fresh start. *See Compass Bank v. Meyer (In re Meyer)*, 296 B.R. 849, 857 (Bankr. N.D. Ala. 2003) (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164-65 (11th Cir. 1995)); *In re Woods*, 260 B.R. at 43. As a result, the deadlines imposed by the Rules are to be

9

strictly interpreted to achieve this end. *In re Woods*, 260 B.R. at 43 (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S. Ct. 1644, 118 L. Ed. 2d 280 (1992)).

A review of the testimony and evidence demonstrate that GAI and its counsel took some action. As previously mentioned, Mr. Sodergren, from the day he received the Notice to the Deadline of June 1, had 80 days to help GAI assess whether or not they needed to file a complaint by the Deadline. The Court acknowledges that during this time frame, Mr. Sodergren and his firm took the following steps: reviewing the Debtor's schedules and GAI's state court file; obtaining a document from the Debtor's estranged step-daughter regarding assets allegedly remaining in the Debtor's possession; briefly communicating with the Trustee regarding the 341 Meeting; arranging with Debtor's counsel and conducting the (informal) Examination of the Debtor; and informally requesting documents from the Debtor in writing two days before the Deadline.

Unquestionably, actions were taken, but counsel for GAI apparently did not acquire what it considered sufficient information. The problem from this Court's perspective is the timeliness of their actions. For instance, no one from GAI or Rosen & Harwood contacted the Debtor's counsel until May 1, 2009, 49 days after Mr. Sodergren was personally notified of the Debtor's case. No one filed a notice of appearance on behalf of GAI until 54 days after Mr. Sodergren received the Notice. No one on behalf of GAI attended the 341 Meeting. Additionally, no formal discovery requests were filed with the Court prior to the Deadline other than an informal "Notice of 2004 Examination". Mr. Sodergren knew from his conversation with the Trustee in March that he would need a Rule 2004 examination, but instead waited until May to procure one. Even then, the Examination did not take place until May 15, 2009, 17 days before the June 1 Deadline.

10

The Court is also mindful that GAI and its counsel were very familiar with the Debtor and her situation due to the 2007 state court suit. Mr. Sodergren alleges GAI filed the Motion so close to the Deadline, because Mr. Murphree had not yet produced the requested documents. This Court is unsympathetic, because had GAI, whose claim is quite large, and its counsel really wanted the documents, they could have contacted the Debtor's counsel earlier in the case and utilized the discovery procedures of this Court. Instead, no written request to the Debtor for documents appears to have been produced until three days prior to the Deadline and again after the Deadline. Even then, the request was not made pursuant to any formal discovery with the Court. Further, the Court notes that many time periods in bankruptcy are short–20, 30, 60 days. GAI's counsel knows this, and yet they still did not proceed expeditiously in this case. The Court is left to conclude that the time simply got away from GAI and its counsel. Clearly, Mr. Sodergren, his firm and his client wanted to do something, but what they sought to achieve did not occur in a timely fashion and with such vigor as to overcome the Debtor's opportunity for a fresh start and to warrant cause to extend the Deadline.

Finally, this Court finds it important to add an additional factor to the *Ballas* factors, the "totality of circumstances". While the *Ballas* court did not mention the "totality of circumstances" as one of its factors, this Court believes that not only the Debtor's good faith cooperation, but her situation, motives and similar issues should be considered. In this case, the Debtor's husband was tragically murdered at their home on a Sunday morning. Within months, she was essentially evicted from their home, because her estranged stepdaughters had the utilities cut off.[17] Further, despite

---

[17]The Court is aware that there may be "more to the story" regarding the Debtor and her stepdaughters. However, although she does not appear to have been subpoenaed, GAI and its counsel indicated on their witness and exhibit list that Ms. Hammond would be called as a

11

having no involvement in her husband's business, not even as an employee, she was nonetheless pursued by GAI for over half a million dollars. From a review of the Debtor's schedules, this was the only debt she could not handle, and thus, it appears to have been the catalyst for the filing. Despite these difficulties, the Debtor has cooperated throughout her chapter 7 case, and she is entitled to have the deadlines strictly enforced.

### III. CONCLUSION

Based on these findings and conclusions, the Court finds that GAI's Motion is due to be **DENIED**.

Accordingly, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the Motion for Extension of Time to File Complaints under 11 U.S.C. § 523 [and 11 U.S.C. § 727] and Request for Expedited Hearing is **DENIED**.

Done this the 31st day of August, 2009.

        **/s/ Tamara O. Mitchell**
        TAMARA O. MITCHELL
        United States Bankruptcy Judge

TOM/ejb

xc:    David Murphree, Attorney for the Debtor
       Kris Sodergren and Kathryn Pope, Attorneys for GAI
       Jim Henderson, Chapter 7 Trustee

---

witness. (Proceeding No. 24) Ms. Hammond did not appear at the Hearing and GAI and its counsel offered no other evidence to rebut the Debtor's story.